PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK v. LLEWELLYN et al.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1893.)

No. 85.

LIFE INSURANCE—APPLICATION—WARRANTIES.

When the statements in the application are made part of the policy, and declared to be warranties, it is a good defense to show that they were untrue, without further showing that the applicant knew or believed them to be untrue. Moulor v. Insurance Co., 4 Sup. Ct. 466, 111 U. S. 335, distinguished.

In Error to the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee. Reversed.

Statement by TAFT, Circuit Judge:

This was a proceeding in error to reverse the judgment of the circuit court of the United States for the eastern district of Tennessee in favor of M. Llewellyn, guardian of Mattie C. McGaughey and Edith G. McGaughey, and of Sarah R. McGaughey in her own right against the Provident Savings Life Assurance Society of New York, upon a policy of insurance on the life of Edward W. McGaughey, the father of the persons for whose benefit the action was brought. The defense was that there had been breach of warranties contained in the contract.

The contract recited that "the Provident Savings Life Assurance Society of New York, in consideration of the stipulations and agreements in the application herefor and upon the next page of this policy, all of which are a part of this contract, and in consideration also of the payment of $114.24, being the premium hereon for the first year, promises to pay Sarah R., Margaretta C., and Edith G. McGaughey, children of Edward W. McGaughey, share and share alike, or to their legal representatives or assigns, the sum of $6,000, less any indebtedness on account of this policy, within ninety days after acceptance at the office of the society in the city of New York of satisfactory proofs of the death of Edward W. McGaughey, of Chattanooga, county of

Hamilton, and state of Tennessee, (the insured under this policy,) provided such death shall occur on or before the 13th day of October, A. D. 1891. And the said society further agrees to renew and extend this insurance upon like conditions, without medical re-examination, during each successive year of the life of the insured from date hereof, upon the payment, on or before the thirteenth day of October in each such year, of the renewal premiums in accordance with the schedule rates, less the dividends awarded hereon, subject to the stipulations regarding payment of premiums and violations of law. Claim under this policy by death occurring two or more years after its date will be incontestable, except for fraud in obtaining this policy." On the third page of the policy appeared a copy of the application, in which was given the statement by the applicant of his name, occupation, residence, and other circumstances in respect to himself, at the conclusion of which was the following: "We further declare and warrant, jointly and severally, that all the foregoing statements and representations, as well as those made or to be made to the medical examiner, or in any certificate of health hereafter given to the society by me, are and shall be true and shall be the basis of the contract with the society if a policy be issued or renewed thereon; and that, if any untrue or fraudulent statement or representation shall have been made, or if at any time any covenant, condition, or agreement herein made shall be violated, said policy and insurance shall be null, void, and of no effect." Then follows a copy of the statements of the applicant to the medical examiner. The ninth question was: "Have you ever had any of the following?" under which was a list of 47 diseases, one of which was delirium tremens,— to which question the applicant answered "No." At the close of the medical examination this statement, signed by the insured, appeared: "I hereby further declare that I have read and understand all the above questions put to me by the medical examiner, and the answers thereto, and that the same are warranted by me to be true, and that I am the same person described as above."

Edward W. McGaughey, the insured, died December 23, 1890, within the first year, about two months after the policy was issued, of heart failure and exhaustion, caused by a prolonged drunken spree.

The declaration was in the ordinary form, and among other pleas of the defendant was one that the deceased had falsely and fraudulently answered the ninth question as above, and had had delirium tremens before filing his application.

On the trial, evidence was introduced tending to show that the insured was not a constant drinker, but that he went upon periodical sprees,—the length of the period between the sprees being in dispute; and that whenever he went upon such sprees they were continued for several days, until he became sick, and medical aid was called in. It further appeared without contradiction that at least one of his sprees before the issuance of the policy had ended in delirium tremens. The court charged the jury that, in order to establish its defense, based on the falsity of the statements of the insured in the application, the defendant must show not only that he did not tell the truth in them, but that he knew he was not telling the truth at the time.

Eakin & Dickey, (Edwin B. Smith and W. L. Eakin, of counsel,) for plaintiff in error.

Clark & Brown, for defendants in error.

Before JACKSON and TAFT, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, after stating the facts, delivered the opinion of the court.

The uncontradicted evidence showed that the insured had had delirium tremens before making his application for a policy. Two months after taking out his policy he died from exhaustion and heart failure, following a debauch. Even if the statements in the

application are to be treated, not as warranties but only as representations, in making which the applicant was merely bound to good faith, and even if the law requires that the materiality of the representations should appear to render their falsity a good defense, we think that it was the duty of the court in this case to direct a verdict for the defendant.

We think, moreover, that the court was in error in instructing the jury that, to constitute a good defense, the defendant company must show not only that the statements in the application were untrue, but also that the applicant knew or believed them to be untrue. The statements in the application are made part of the contract, and are expressly declared to be warranties, and they are referred to in the body of the policy as agreements and stipulations. In Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, it was held that, when there was any reason to doubt the meaning of the contract of insurance, it would be presumed that the statements of the applicant were to be regarded as representations, and not as strict warranties, and the agreement would be presumed to be a warranty only that the answers were made in good faith, and true to the knowledge of the insured. In that case, however, the statements were referred to in the body of the policy as representations, and it was held that terms used in the policy controlled those used in the application. In this case, we do not see any room for doubt or construction. It is impossible to escape the meaning that the statements were intended to be warranties. Strict construction against the company cannot destroy the necessary effect of plain language. Parties have a right to contract in this wise if they will. Clemans v. Supreme Assembly, etc., 131 N. Y. 485, 30 N. E. 496; Foot v. Insurance Co., 61 N. Y. 571.

The judgment of the circuit court is reversed, with instructions to order a new trial.