AMERICAN CREDIT INDEMNITY CO. v. CARROLLTON FURNITURE
MFG. CO.

(Circuit Court of Appeals, Second Circuit. May 25, 1899.)

No. 144.

**1. INSURANCE—STATEMENTS IN APPLICATION—EXPRESS WARRANTIES.**
When there is a distinct agreement that an application for insurance
is a part of the contract, and the statements in the application are ex-
pressly declared to be warranties, they are to be treated as such, and not
merely as representations, and must be strictly true, or the policy will not
take effect.

**2. SAME—CONSTRUCTION OF CONTRACT—WHAT LAW GOVERNS.**
The fact that an application for a policy of insurance against business
losses by the insolvency of debtors was made out in the state where the
applicant resided does not render the contract subject to the statutes of
that state, where the application was forwarded to the company in another
state, where the policy was issued, and, so far as appears, where a loss
thereunder is payable. Such a policy is a commercial instrument, and
governed by the general principles of commercial law, unless the statutes
of the state where the contract was made control its construction.[1]

**3. SAME—NOTICE OF LOSS—WAIVER.**
Mere silence, by failure to reply to a letter regarding a loss, is not a
waiver of a positive requirement of the policy as to notice of the loss,
when the policy expressly provides that it shall not be held a waiver, and
that changes in the conditions of the policy must be in writing, signed by
the president or secretary of the company.

**4. SAME.**
A policy of insurance against business losses by reason of insolvency of
debtors contained definitions of insolvency, among which was the return
unsatisfied of an execution in favor of the insured. It also required the in-
sured to give notice, within 10 days after learning of the insolvency of a
debtor, on blanks furnished by the company, and in the manner prescribed
by it. Such blanks contained no reference to insolvency, but required the
insured to answer questions as to the "failure" of a debtor, date, nature,
etc. *Held*, that the word "failure" was used in its commercial sense, and
that confessions of judgments by a debtor who was in business, and a
seizure of his stock by the sheriff, causing a suspension of his business,
was a "failure" in a commercial sense, and that a report of such fail-
ure by the insured within 10 days, with the questions in the company's
blanks fully answered, fulfilled the requirements as to notice, and a second
notice after the return of an execution unsatisfied was not required.

In Error to the Circuit Court of the United States for the Southern
District of New York.

This is a writ of error to review a judgment of the circuit court for the
Southern district of New York, in favor of the Carrollton Furniture Manufac-
turing Company, a Kentucky corporation, against the American Credit In-
demnity Company, a New York corporation, upon a policy of insurance, dated
July 2, 1895, which insured the plaintiff against business losses from the in-
solvency of debtors on sales and deliveries of goods to be made between July
1, 1895, and July 31, 1896. A rider, subsequently attached to the policy, pro-
vided that losses of the kind included in the policy, occurring after the payment
of the premium, on sales and shipments made from July 1, 1894, to July 1,
1895, could be proven under the policy in accordance with its terms. The
question upon the trial to the jury in regard to the amount of losses related
to the loss suffered by the plaintiff in its sales to a firm under the name of
Elliott & Cougle, of the city of New York. The jury returned a verdict for

---

[1] As to credit insurance, see note to Indemnity Co. v. Wood, 19 C. C. A. 271,
and note to American Credit Indemnity Co. v. Athens Woolen Mills, 34 C. C.
A. 165.

the plaintiff for the sum of $5,666.27 and interest, upon which judgment was entered.

Albert Stickney, for plaintiff in error.

William H. Russell, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts). In the application for insurance, which was made in Kentucky, the plaintiff warranted the answers to the questions asked by the defendant to be true, and offered these answers as a consideration for the policy to be issued. The policy, subsequently executed, and dated in New York City, declared that it was issued in consideration of the application, which was made part of the contract of indemnity. The answer to the question in regard to gross sales and gross losses was that for each of three years ending in July, 1891, 1892, and 1893, the gross sales were about $100,000. The actual sales for these years were $87,441.61, $99,990.65, and $97,831.06. The gross losses stated in the answer for the same years were $498.90, $1,040.26, and $818.22. The losses as claimed by the defendant for those years were $3,080.74, $2,275.17, and $1,334.59. The important question upon this point was in regard to the amount of losses for the year ending in July, 1891, which the defendant claimed had been reduced to about $1,680, and there was vague testimony about an additional reduction of small amount. The defendant asked the court to charge that the written answers to the questions in the application were express warranties, upon the faith of which the policy was given, and, if untrue, the materiality to the risk was unimportant, and, if not strictly performed, that the plaintiff could not recover. The court charged that, if there was a substantial misrepresentation as to the facts at the time the application was made, the plaintiff was not entitled to recover, but, if the differences were unsubstantial and immaterial, such differences would not stand in the way of its recovery, and, if the difference was between $498.90 and $3,080.74, that would be a material and substantial variation from the amount stated in the application, and would defeat the plaintiff's right to recover. The request in regard to the necessity of strictness in performance of a warranty was not complied with, and, probably from the fact that, as the policy also made misrepresentation and concealment matters in avoidance, the difference between a warranty and representation was not sharply pointed out.

The application contains an unequivocal warranty, and by the express terms of the policy became a part of the contract. Courts have been reluctant to import terms of warranty which were contained in the application or proposition for insurance into the completed agreement, unless the policy clearly manifested the agreement of the parties to the union of the two papers in one contract (Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500); but when there is a distinct agreement that the application is a part of the contract, and the statements in the application upon which the contract is based are expressly declared to be warranties, the intent of the insured to bind himself to exactness of truth in his answers, although the facts which are called for may seem not material, is clearly and adequately mani-

fested, and "the contract must be enforced according to its terms" (Miles v. Insurance Co., 3 Gray, 580; Campbell v. Insurance Co., 98 Mass. 391; Burritt v. Insurance Co., 5 Hill (N. Y.) 188; Brady v. Association, 20 U. S. App. 337, 9 C. C. A. 252, 60 Fed. 727). Where the assertions or representations upon which the contract is declared to be based are warranties, they must be "strictly true, or the policy will not take effect; and this is so whether the thing warranted be material to the risk or not. It would, perhaps, be more proper to say that the parties have agreed on the materiality of the thing warranted, and that the agreement precludes all inquiry into the subject." Burritt v. Insurance Co., supra. This terse statement by Judge Bronson has been often repeated in various modes of expression, but to the same effect. Jeffries v. Insurance Co., 22 Wall. 47; Insurance Co. v. France, 91 U. S. 510, and the cases previously cited. The answer in regard to the amount of gross sales was expressed to be approximate, but, in regard to the amount of the gross losses which were the result of the business for the year ending in July, 1891, the answer professed to be exact; and the question of a breach of warranty, if any question really existed, rather than that of misrepresentation, should have been submitted to the jury. If no question could exist in regard to the fact of a breach, as would be the case if the actual loss was $1,680, instead of $498, there was no liability under the policy.

The defendant presented upon the argument before this court a statute of Kentucky of February 4, 1874, which provided as follows:

"All statements in any application for or policy of insurance shall be deemed and held representations and not warranties, nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy."

This statute seems to have been held by the Kentucky court of appeals to relate to statements in an application, irrespective of the fact that it had been agreed by the parties that they were warranties. Insurance Co. v. Rudwig, 80 Ky. 223–234. The application in this case was made in Kentucky, and was, when made and signed, simply a proposition for a bond of indemnity or policy of insurance. It was sent to New York, the proposition was accepted, and a contract of indemnity was thereupon made and executed in New York, and was presumably returned to the other contracting parties in Kentucky. No fact is disclosed which tends to show that the place of performance was to be in Kentucky. We see no reasons why the provisions of a statute of Kentucky should be imported into a contract known by both parties to be made in New York, and, so far as payment by the defendant is concerned, to be performed in St. Louis or in New York. It was, when made, a commercial instrument, and is to be construed in accordance with the general principles of commercial law, unless there are statutes of the state of New York which control its construction. Hyde v. Goodnow, 3 N. Y. 266; Western v. Insurance Co., 12 N. Y. 258; Scudder v. Bank, 91 U. S. 406.

The defendant assigns as error the submission of Elliott & Cougle's claim to the jury, because notice of this claim was not made within 10 days after knowledge of the insolvency, in accordance with the provisions of the policy, and there was no waiver of this provision. The defendant's agreement was a bond of indemnity against loss resulting

from "insolvency" of debtors, as defined in the policy.    This definition is as follows:

"(11) The term 'insolvency of debtors,' whenever used in this bond, is defined to be: Where a debtor has made a general assignment for the benefit of his creditors; where an attachment for a debt for merchandise shall have been levied on his general stock in trade; where a writ of execution against him shall have been issued in favor of the indemnified, and returned unsatisfied, except where such execution has been so issued and returned after a receiver has been appointed of the property of such debtor; where a receiver of the general stock in trade of a debtor shall have been appointed, and the amount of the claim of the indemnified has been ascertained by final decree in the receivership proceedings, in which event the net loss thus ascertained shall be included in the calculation of losses under this bond."

There is no question that the loss through Elliott & Cougle resulted from their insolvency as thus defined, but the policy required an initial and prompt notification of anticipated losses, and called for a final statement of claims after the expiration of the policy and the payment of the amount due, as follows:

"(4) Notifications of claims must be delivered to this company, on the blanks furnished and in the manner prescribed by it, within ten (10) days after the indemnified shall have had information of the insolvency of any debtor, and must be received at the central office of the company at St. Louis during the term of this bond; otherwise, such claims shall be barred. The company will acknowledge such notifications when received, but the reception of acknowledgment thereof or failure to acknowledge the same shall not be considered to be an admission of liability on the part of this company, or a waiver of any condition or provision of this bond, or of any defect in such notice."

"(12c) A final statement of all claims which have been filed in accordance with condition No. 4 shall be made by the indemnified, and forwarded to the central office of this company at St. Louis, Missouri, in the manner prescribed and upon blank forms, which will be furnished upon application. Such final statement must be received at said office within thirty days after the expiration of this bond; otherwise, all claims hereunder shall be forever barred. The adjustment of claims shall be had within sixty days after the receipt of such final statement by the company, and the amount then ascertained to be due shall at once become payable."

Elliott & Cougle confessed judgment, upon which execution was issued on December 10, 1895, in the supreme court of New York, in favor of various creditors; one of the judgments being in favor of the plaintiff, and its execution being returned unsatisfied on February 10, 1896.    On December 14, 1895, the plaintiff notified the defendant of its loss by Elliott & Cougle, which notice was received and acknowledged on December 16th, and on the next day the plaintiff sent to the defendant a particular statement of its account against the debtors, showing the date and the method of shipment of the goods which had been sold.    A final statement was sent at the expiration of the policy. As the initial notices were sent on December 14th and 17th, they were sent and received prior to the return of the execution; and it is contended that no notice of loss was ever sent, in accordance with clauses 4 and 11 of the policy, within 10 days after the plaintiff had information of the "insolvency."    The plaintiff, if no notice in accordance with clause 4 was sent, seeks to avoid the effect of noncompliance by an alleged waiver by the defendant of the defect.    In its acknowledgment of the notice of December 14th it said:    "This acknowledgment shall not be held to be a waiver by this company of any con-

dition or provision of the bond." In its letter of December 17th, the plaintiff said: "If you require anything else in this matter, kindly let us know, and we will send it to you,"—and received no reply. In addition to the provisions in regard to waiver, which have already been quoted, a clause in the policy provided that alterations or changes in any of its conditions must be authorized by the company in writing, over the signature of its president or secretary. On July 29, 1896, the plaintiff sent to the defendant, and it received, certified copies of the plaintiff's judgment against Elliott & Cougle, of the execution issued thereon, and of the sheriff's return of nulla bona thereon, but this was long after the return of the execution.

If the terms of the policy require that notice of a loss must be made within 10 days after the insolvency, as defined in clause 11, has taken place, there was a failure to give such notice within 10 days after February 10, 1896, the previous notice was ineffectual because the loss had not occurred, and the claim was barred by the omission, unless compliance with the terms of the policy was waived. Blossom v. Insurance Co., 64 N. Y. 162; Quinlan v. Insurance Co., 133 N. Y. 356, 31 N. E. 31. The alleged waiver is founded entirely upon the silence of the defendant in not replying to the letter of December 17th. Mere silence cannot support a waiver of a positive requirement in the policy, in the face of the stringent terms of the contract, which expressly declare that silence is not a waiver of any defect in the notice of loss, and by the further provision that changes in the conditions of the policy must be in writing, signed by the president or secretary. Walsh v. Insurance Co., 73 N. Y. 5; Baumgartel v. Insurance Co., 136 N. Y. 547, 32 N. E. 990; Moore v. Insurance Co., 141 N. Y. 219, 36 N. E. 191; Marvin v. Insurance Co., 85 N. Y. 278. There are cases in abundance which declare that the retention of defective proofs of loss, and silence in regard to the defect, constitute sufficient evidence of waiver; but these cases relate to contracts of a much less stringent character than that of this policy. Titus v. Insurance Co., 81 N. Y. 410; Gray v. Blum, 55 N. J. Eq. 553, 38 Atl. 646.

This discussion in regard to waiver is of no importance if the notice of December 14th was in accordance with the requirements of clause 4. If a construction of that clause had not been made by the defendant's continuous cotemporaneous definition of its terms, it would seem to require that notification of this claim must be made in 10 days after the return of an unsatisfied execution against Elliott & Cougle, although it is manifest that promptness for the purpose of an investigation was the important point in the first proof of a loss which is not to be paid until the expiration of the policy. The claim, however, requires that proofs must be made upon the blanks furnished by the defendant, and they were made accordingly. The questions in those blanks ask nothing about insolvency, but ask, among other things, the date and the nature of the failure. The word "failure," when used in its commercial sense, and as employed in mercantile life, means a suspension of payment, or an enforced suspension of business, and the nature of the failure means the kind or distinguishing characteristic of the suspension, whether voluntary or enforced. To the first question the plaintiff replied, "December 11, 1895," and to the

second, "Confession of judgment." In answer to other questions, the defendant was informed that levies had been made upon the stock of goods to secure the various judgments, and that the sheriff of the county was in charge of the debtor's estate. The plaintiff answered the defendant's questions as asked, which did not relate to insolvency as defined in clause 11, but to the date and kind of failure in its ordinary mercantile sense; and, inasmuch as the defendant received the notice which it required, and as it required, the importance of the definition of insolvency with reference to the notice of loss disappears from the case.

The remaining question in regard to the amount of "initial loss" to be borne by the plaintiff was not argued by the respective counsel. The bond or policy, which was to expire on July 31, 1896, guarantied the defendant to the extent of $10,000, over and above the loss of $1,200 first to be borne by the indemnified, on total gross sales and deliveries of goods amounting to $80,000 or less, to be made between July 1, 1895, and July 31, 1896. The loss first to be borne was 1½ per cent. on gross sales of $80,000, but, should they exceed that amount, the initial loss should increase in like ratio. Afterwards it was agreed that losses, occurring after the payment of the premium, on sales and shipments made from July 1, 1894, to July 1, 1895, "may be proven under this bond in accordance with its terms and conditions, and all other terms to remain in full force." The amount of the losses which were sued for included losses in both years, and the defendant claimed a deduction of initial losses on the whole business of each year. The rider was silent upon the subject of initial loss, and the question was not orally argued by counsel. We prefer not to decide this point until we may have had the benefit of a more full discussion.

The judgment is reversed, with costs.