HOME LIFE INS. CO. v. MYERS.

(Circuit Court of Appeals, Eighth Circuit. December 2, 1901.)

No. 1,456.

1. LIFE INSURANCE—APPLICATION—MATERIAL QUESTIONS.

Where an applicant for life insurance agrees with the company as a consideration for such insurance that he has no proposition or negotiation for insurance pending with or under consideration by any other insurance company, and warrants that his answers to questions relative thereto are true, such agreement is on a material matter, and will be enforced.

2. SAME—FALSITY OF ANSWERS.

Where an application for life insurance in defendant company bore date July 1st, and policies were issued thereon September 8th, and it

was shown that the applicant had applied to another company for insurance on June 28th, and obtained policies thereon about September 15th, the applicant's negative answer to a question in his application with defendant company as to whether he had any proposition for insurance with another company then pending was false.

3. SAME—AMOUNT REQUESTED—SEPARATE POLICIES—DEPARTURE FROM APPLICATION.

Where an application is made for insurance in the amount of $25,000, and the company issues two policies for $10,000 each and one for $5,000, each containing the statement that it was executed "in consideration of the written and printed application for this policy," and each accepted by the insured without objection, the fact that one policy for the whole amount was not issued, instead of separate policies, is not such a departure from the application as will relieve the applicant from agreements made therein.

4. SAME—CONSTRUCTION—CONTRACT FOR INSURANCE AND OF INSURANCE.

An application for life insurance dated July 1st contained the questions: "What amount has been paid to make the insurance under this contract binding from this day, provided the application is approved? Has conditional receipt been given? State the terms agreed on for settlement of first premiums subject to approval by the company?" Proper answers were given thereto. Policies were issued in accordance therewith on September 8th, each reciting that it was issued in consideration of the "application for this policy," and they were accepted by the insured. *Held*, that the application and answers thereto amounted to a contract for insurance, and not to a contract of insurance from the date of the application.

5. SAME—DATE OF POLICIES—ACCEPTANCE AS WAIVER.

By accepting the contracts of insurance dated September 8th, in full satisfaction of the contract for insurance, the insured waived departure from any provisions of the application, requiring the policies to be issued as of the date of application.

6. SAME—NEW OR MODIFIED APPLICATION—FACTS CONSIDERED.

Insured filed application for life insurance with defendant company, and underwent a medical examination, the results of which were filled out in blank forms on the back of the application. Owing to the large amount of insurance requested, another examination by a second physician was had, and the results thereof were filled in on the reverse side of one of the company's blank applications. No further application from insured was required, but he filled in and signed the blank form identically as the first, except as to the questions: "Is applicant now, or has he ever been, insured in this or any other company? Give name and amount." "Has any proposition or negotiation for insurance been made in this or any other company on which a policy has not been issued, or which, if issued, was modified in amount, kind, or rates?" In the original application the first question was answered, "$15,000 N. Y. Life; $5,000 lodge assessment;" the second, "No." In the second application the answers were transposed. *Held*, that there was no contract between the parties that the second application should constitute a new or modified application for the desired insurance.

7. SAME—DEFINITE ANSWERS—CLERICAL MISTAKE.

The answer to the question relative to pending propositions or negotiations for insurance with other companies was not rendered ambiguous and uncertain by the answer filed thereto in the second application, so as to impose on the company the duty of seeking more definite information at the risk of waiving, by failure so to do, the requirement of any information on the subject; the transposition being a clerical error, and a negative answer being clearly intended.

8. SAME—PROOFS OF DEATH—WAIVER—UNKNOWN DEFENSE.

Requiring proofs of death, or treating for a settlement of an insurance policy, or otherwise subjecting the claimant to expense is not a waiver of any defense unknown to the company at the time.

In Error to the Circuit Court of the United States for the District of Kansas.

Clifford Histed and W. H. Rossington (William G. Low and Chas. Blood Smith, on the brief), for plaintiff in error.

John H. Atwood and Chas. Hayden (H. F. Graham, C. F. Hurrel, and Sidney Hayden, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge. This was an action instituted by the defendant in error, as administrator of the estate of Paul B. Swetlick, to recover of the Home Life Insurance Company, plaintiff in error, the sum of $25,000, alleged to be due him on three certain policies of life insurance executed by the insurance company upon the life of his intestate. Many defenses were interposed to the action, but only one of them will be considered by us, as it is decisive of the case. The three policies sued on (two for $10,000 each and one for $5,000) each read in part as follows:

"The Home Life Insurance Company, by this policy of insurance, in consideration of the written and printed application for this policy, which is hereby made a part of this contract, and of the payment," etc., "does insure the life of Paul B. Swetlick, of * * *, in the amount of * * * dollars."

The application referred to in the policy, embodying certain statements and answers to interrogatories, contains, over the signature of the insured, the following agreement:

"I also agree that all the foregoing statements and answers * * * are by me warranted to be true, and are offered to the company as a consideration of the contract."

Question 16 found in the application is as follows: "Has any proposition or negotiation or examination for insurance been made in this or any other company or association on which a policy has not been issued, or which, if issued, was modified in amount, kind, or rates? State in what company, and when; or, is any other negotiation for insurance contemplated?" To this question the insured answered, "No." From the foregoing it appears that the insured, among other things, agreed with the company, as a consideration for the policies in question, that he at that time had no proposition or negotiation for insurance pending with or under consideration by any other insurance company. This was a material matter, about which the company might reasonably require information, and upon which its action might reasonably depend. It was deemed so material by the company that it required from the insured a warranty of the truth with respect to it; and the insured, for the purpose of securing the policy, was willing to make and did make the warranty as required. This agreement, relating as it does to a matter obviously proper and material for consideration by the insurance company in determining whether it would accept the proposition for insurance on the life of the insured, would be enforceable even if it were not made the subject of special warranty; but, being so made, it comes fully within the principles announced in many

cases, and must be enforced.   Jeffries v. Insurance Co., 22 Wall. 47, 22 L. Ed. 833; Society v. Llewellyn, 7 C. C. A. 579, 58 Fed. 940; Brady v. Association, 9 C. C. A. 252, 60 Fed. 727; American Credit Indemnity Co. v. Carrollton Furniture Mfg. Co., 36 C. C. A. 671, 95 Fed. 111; Insurance Co. v. Webb, 45 C. C. A. 648, 106 Fed. 808. The record shows beyond cavil or doubt that at the time the insured made the application in question he•had an application then under consideration for insurance in the Northwestern Mutual Life Insurance Company for $20,000.   The application to the Home Life Insurance Company bears date July 1, 1892.   The three policies issued on that application bear date September 8, 1892.   On June 28, 1892, the insured made application in writing for $20,000 of life insurance in the Northwestern Life Insurance Company, and subsequently, about the middle of September, two policies of that company, each for $10,000, issued on that application, were delivered to the insured.   Accordingly, whether the application to the Home Life Insurance Company is to be treated as made when signed, or on a later day when forwarded to the insurance company for its action, on either of these dates and during all the time intervening an application was pending and under consideration by the Northwestern Mutual Life Insurance Company for a large amount of insurance on the life of the insured, and his answer to question 16 was undoubtedly false.   Plaintiff's counsel appreciate the difficulty involved in this situation, and strenuously seek to avoid the result. They pleaded in their reply that the insured, at the time he made the application in question, informed the agent of defendant company that he had made applications for other and additional insurance, which at that time had not been acted upon, and that the nonappearance of this fact in the application was the fault of the agent of the defendant company, and not that of the insured.   There is not a scintilla of evidence to support this plea.   All the evidence of this character in the record relates to the matter of securing further insurance at some time in the future, and may have been pertinent to another phase of the case, but does not relate at all to the matter of pending negotiations for insurance, which is the subject involved in the first part of question 16.

They next contend that the agreements found in the application were not binding on the insured, because the policies were not issued in accordance with the terms of the application.   It is contended that, because the application was for a policy of $25,000, and because the insurance company issued three policies for $10,000, $10,000, and $5,000, respectively, aggregating $25,000, this was such a departure from the terms of the application as amounted to a refusal to issue the policy as applied for, and to a new proposition by the insurance company to the insured to take the three policies in question on the terms contained in them alone, without reference to the application.   It is also contended that by the terms of the application the policy applied for was to bear date July 1, 1892, the date of the application, or, at any rate, was to be effective from and after that day; but the policies actually issued bore date September 8, 1892, and therefore that the policies were not issued on

the application as made. There is, in our opinion, no merit in either of these propositions. In the first place, the application is not for one policy of $25,000, but merely for insurance in that amount. The company accepted the proposition, and delivered to the insured insurance consisting of three policies, aggregating the amount desired. The policies were delivered to the insured with the statement forming a part of each policy that it was executed "in consideration of the written and printed application for this policy." The insured accepted them, without objection, as issued pursuant to the application for the same. Neither he nor any person claiming under him can now be heard to repudiate on such trifling grounds the application so recognized by him.

We are also of opinion that there is no provision in the application clearly or by any fair implication requiring the policy or policies to be issued thereupon to bear date July 1, 1892, or to be effective thereafter. It is true the following question—being No. 19—appears in the application, namely:

"What amount has been paid to make the insurance under this application binding from this day, provided the application is approved by the company? Ans. $969.75." "Has conditional receipt been given? Ans. Yes." "State in full the terms agreed upon for the settlement of first premiums subject to the approval of the company? Ans. Check given due September 4, 1892."

This amounts at best only to a contract for insurance, provided the application should be approved by the company; in other words, a contract for insurance was concluded subject to the condition aforesaid. But the contract of insurance usually expressed by a policy was clearly not to be made until the application should be approved by the company, and then, in the absence of stipulation to the contrary, only within a reasonable time thereafter. But, suppose it be true that the application contemplated that the insurance applied for, if approved by the company, should be effective after July 1, 1892. The company executed its policies bearing date September 8, 1892, reciting in each of them that they were issued in consideration of the "application for this policy," and tendered the same to the insured as and for the insurance applied for, and he accepted the same as issued on that application. Such being the case, we are of opinion that the contracts of insurance were accepted by the insured in full satisfaction of the contract for insurance, and that any trifling departures from the provisions of the latter contract were thereby waived by him. The plaintiff, claiming under and through him, is bound by his acts, and on every principle of estoppel cannot repudiate his obligations, constituting the admitted consideration for the policy, and hold the insurer to honor its obligation undertaken for that consideration. The doctrine of waiver and estoppel both combine to prevent any such inequitable result.

The next proposition urged by plaintiff's counsel to excuse the false answer to question 16 is this: That the answer was so ambiguous and uncertain that, if the insurance company wanted more exact or definite information, it should have requested it, and, having failed to do so, must be held to have waived the requirement of any

information on the subject. To appreciate the contention of counsel, it becomes necessary to advert to the proof. It appears that after the application was made and signed, and on August 15, 1892, a medical examination of the applicant was made, the results of which were written or filled out in blank forms on the back of the application; that when the application, with the accompanying report of the medical examiner, was received, at the home office of the company in New York, the executive officers concluded, and so wrote its general manager at Chicago, that by reason of the large amount of insurance applied for by the applicant the company desired another medical examination made by some other good physician of the regular school; that accordingly Mr. Swetlick, the applicant, was subjected to a second examination. It appears that the general character of the medical examination made of applicants for insurance by the defendant company was to require of the applicant and examining physician answers to certain questions which appear printed on the back of forms of application for insurance, and to require a report thereon by the physician. When the medical examiner undertook to make the second examination pursuant to the requirement of the executive officers of the company, he took one of the blank forms which the company employed for that purpose, and filled it out, stating the results of his examination, and answering the several questions there appearing. This was done on September 3, 1892, and the report is signed by the second medical examiner as of that date. Notwithstanding the fact that no further application was suggested to or required of the applicant, nevertheless, because the blank for such application was on the reverse side of the medical examiner's form, the same was signed by the applicant with the same date, abbreviations, punctuations, and spacing, as were found in the first application, with the exception of answers to questions 15 and 16. In the first application questions 15 and 16, with their answers, are as follows:

"(15) Is applicant now, or has he ever been, insured in this, or any other company; give name of company and amount? Ans. $15,000.00 N. Y. Life; $5,000.00 lodge assessment.

"(16) Has any proposition or negotiation or examination for insurance been made in this or any other company or association on which a policy has not been issued, or which, if issued, was modified in amount, kind or rates? State in what company and when; or, is any other negotiation for insurance contemplated? Ans. No."

In the so-called second application the answers to these two questions are transposed, so that the answer "No" is made to question 15, and the answer "$15,000 N. Y. Life, $5,000 lodge assessment," is made to question 16. The paper called the second application was obviously intended to be merely a repetition or copy of the first application, and in no sense the making of a new one. Such being the case, neither the insurance company nor the applicant can be held to have intended that the gratuitous copying of the first application on the back of the required second medical examination should constitute a new or modified application for the desired insurance. The parties' minds never met on any such proposition, and there was therefore no agreement to that effect. Furthermore, it is obvious

from an inspection of the second application that there was simply a transposition of answers to the two questions constituting a mere clerical error. Any other conclusion would involve the applicant in a palpable falsehood in his answer to question 15, such as would defeat recovery on the policies. He answers, in the so-called second application, that he had never been insured in any company, whereas the fact is, as disclosed by his answer to the same question in the first application, and also by the undisputed evidence in the case, that he was then insured in the New York Life Insurance Company and in a certain lodge. Moreover, the answer to question 16 in the supposed second application is manifestly so inapplicable and irresponsive to the question as to clearly show that it was never intentionally·placed there. Taking these two medical examinations with the applications for insurance on the back of them together, as they appear, in connection with the facts and circumstances attending their execution, as already detailed, we think the sensible and rational interpretation to be placed upon them, and one upon which both parties to the contract acted, is that question 16 was not only answered in the negative, but was intended to be so answered. Any other interpretation involves a palpable contradiction and absurdity, as well as a breach of warranty, which would be equally fatal to plaintiff's recovery.

Counsel for plaintiff have called our attention to the case of Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644, and to a long line of similar authorities, which hold that, when a question in an application for insurance is imperfectly but truthfully answered as far as it goes, the company to which the application is made is deemed to have waived the requirement for more perfect or accurate information if it fails to request it; but, in our opinion, that line of authority is totally inapplicable to the present case. Here there is neither a truthful nor an imperfect answer. On the contrary, a false answer, which, by the terms of the contract, avoids the policy.

The next contention is that the defendant company required proofs of death from the plaintiff, and subjected him to some trouble and expense in preparing the same, and thereby, under the authority of the case of Insurance Co. v. Baker, 27 C. C. A. 658, 83 Fed. 647, and cases therein cited, waived the right to insist upon the breach of warranty in question as a defense. While it is claimed that one Abernathy, the defendant's agent, or the company itself, had some knowledge of Swetlick's habits, and of the amount of insurance carried by him at the time it requested proofs of death, and while requiring proofs of death and subjecting plaintiff to expense and trouble attending compliance with the request, might preclude reliance upon misrepresentations as to his habits and amount of insurance carried as a defense (as to which, under the peculiar circumstances of this case, we express no opinion), a careful examination of all the evidence fails to disclose that defendant, or any of its agents, had any knowledge, at the time it requested proofs of death, of the particular breach of warranty to which we have confined our attention. Requiring proofs of death, or treating for a settlement, or otherwise subjecting the claimant to expense, is not a waiver of any

defense unknown to the company at the time. Insurance Co. v. Rosenfield, 37 C. C. A. 96, 95 Fed. 358, and cases there cited. The record shows that Swetlick, the insured, died on November 2, 1892, as a result of a gunshot wound, and under such circumstances as indicate self-destruction; that, although a farmer of small means, and practically insolvent, he had negotiated for and secured within a short period of time before his death insurance on his life to the amount, including that sued for in this action, of $87,500. The evidence tended to show that he paid the first premiums on all his policies either by giving his note to the companies insuring him, or borrowing the money from others to pay the same, and that he was a' man of intemperate and dissolute habits.

Besides the defense already considered, several others, based on the evidence just alluded to, charging fraud in securing the insurance, suicide, and breaches of warranty as to habits and facts concerning insurance contemplated by him, were interposed by the defendant company. The evidence relating to these defenses is voluminous and contradictory, and the numerous and interesting questions of law arising thereon were ably argued by counsel, but, in the view we take of the one question already considered, it becomes unnecessary to express any opinion on any of these other questions.

The evidence establishing the breach of warranty on which we place our judgment is uncontradicted and conclusive. The trial court therefore erred in refusing to give the instruction, requested by the defendant at the close of the case, that upon all the evidence the plaintiff was not entitled to recover.

The judgment must therefore be reversed, and the cause remanded for a new trial.