### STANDARD LIFE & ACCIDENT INS. CO. v. SALE.

(Circuit Court of Appeals, Sixth Circuit. April 15, 1903.)

#### No. 1,152.

1. DIRECTION OF VERDICT.

The court below properly refused to direct a verdict when, notwithstanding the view which the court might take of the evidence, it was unable to say that a jury might not, without acting unreasonably, come to a different conclusion.

2. LIFE INSURANCE—WARRANTIES—REPRESENTATIONS.

A life policy provided that "insured * * * makes the following true and complete statements, which are hereby made a part of the contract of insurance, and if any of said statements shall be untrue in any respect, then this policy shall be null and void. * * * (j) I have never had * * * any bodily or mental infirmity * * * except as herein stated. (k) * * * I am in sound condition mentally and physi-

cally, except as herein stated." *Held* to be warranties, and not mere representations resting on the belief of insured.

**3. SAME—GOOD FAITH—EFFECT.**
 If the fact is not as stated by insured, the warranty is breached, and it makes no difference that insured acted in good faith in making the statement.

**4. SAME—RIGHT TO EXACT WARRANTIES.**
 A life insurance company may require the insured to warrant that he has never had any bodily or mental infirmity, except as stated in the contract of insurance, and that he is in sound condition mentally and physically, except as therein stated.

**5. ERRONEOUS INSTRUCTIONS—CURE OF ERROR.**
 An erroneous instruction given of the court's own motion on a material point is not likely to be corrected by a subsequent correct instruction given by request, when the first instruction is not recalled or explained.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

H. R. Boyd and C. A. Lightner, for plaintiff in error.

Josiah Patterson, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

SEVERENS, Circuit Judge. This is a suit brought by Mary E. Sale, the defendant in error, to recover the sum of $9,000 upon an accident insurance policy issued to her husband, Dr. E. Paul Sale, June 18, 1900, and in which she was the beneficiary. The insurance was for one year. Dr. Sale was a physician practicing at Memphis, Tenn., and was a member of the faculty of the Memphis Hospital Medical College. On April 29, 1901, while on a visit to a patient, he suffered an accident from being thrown by his horse violently upon a stone pavement, whereby the neck of the femur of his right leg was broken. He did not recover from the accident, and died on the 8th of June following. The policy stipulated for the payment of $9,000 to the wife of the insured if death should result from the bodily injuries therein mentioned, "as the proximate and sole cause thereof," and contained the following statements and agreement on the part of the insured:

"The insured on the acceptance of this policy makes the following true and complete statements, which are hereby made a part of the contract of insurance, and if any of said statements shall be untrue in any respect, then this policy shall be null and void.  *  *  *

"(j) I have never had fits or disorders of the brain, vertigo, or hernia, or any bodily or mental infirmity or disorder, except as herein stated.

"(k) My habits of life are correct and temperate, and I am in sound condition mentally and physically, except as herein stated."

The insurance company rested its defense upon these grounds: First, that the policy was void for the reason that the insured had, prior to this insurance, suffered a bodily disorder which increased the risk; second, that at the time the insurance was effected he was not in sound physical condition, as he stated; and, third, that the accident was not the proximate and sole cause of the death of the insured.

¶ 3. See Insurance, vol. 28, Cent. Dig. §§ 567, 568.

There were a verdict and judgment for the plaintiff for the sum of $9,418.50.

Upon the trial of the issues before the court and a jury, it was shown that in the latter part of April, 1900, the insured had an attack of pneumonia or of bronchitis (it is not clear which), and that acute nephritis, or inflammation of the kidneys, was developed; that he was in the care of a physician for some time; that a chemical analysis of the urine made at that time disclosed a derangement of the kidneys, but whether of the nature of Bright's disease, so called, or whether of a merely temporary nature, did not certainly appear; that he dieted for this trouble about six weeks, and seemingly had recovered at the time the policy was issued; and that he resumed his professional practice, and continued it until the time of the accident, in April, 1901. The evidence contained in the record, upon the character and gravity of the disorder of the insured, both before and at the date of the policy, gives ground for widely different conclusions. Whatever view we might ourselves take of the case upon its facts, we are unable to say that a jury might not, without acting unreasonably, come to a different conclusion. The jury adopted that most favorable to the plaintiff, upon the issues presented to them by the court, for they must, at least, have found that Dr. Sale did not believe that he had at any time a serious malady.

There was also evidence showing that, after the accident, very serious kidney derangement appeared; and it is hardly open to dispute, and is perhaps not disputed, that a kidney disorder contributed with the accident to cause the death of the insured. But whether this disorder existed at the time of the accident, or was a consequence developed by it, was, on the evidence, a question for the jury; it being possible to conclude that the latter was the fact. At the close of the testimony, counsel for the defendant moved the court for a peremptory instruction to find a verdict for the defendant. The motion was denied. For the reasons already stated, we think that in this there was no error.

A statute of Tennessee (Laws 1895, p. 332, c. 160, § 22) relating to representations and warranties in contracts of insurance reads as follows:

"Be it further enacted, that no written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material, or defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

But it is clear that it does not change or affect the general law of insurance applicable to the facts in this case, for it is not disputed that the matter which was the subject of the warranty increased the risk of loss, if the statement was not true, and in such case the matter is left by the statute as before.

The learned judge, in his instructions to the jury with reference to the interpretation and effect of the statements of the insured regarding his physical condition previous to and at the date of the issuance of the policy, said this:

"Now, when a man says that he has no bodily infirmity, it means that he does not know or suspect or believe that he has any bodily ailment of a permanent character, such as is calculated to weaken the constitution, impair the strength of the system, or to shorten life. It consequently does not include mere temporary ailment which is curable and passes away by treatment—for example, like a cold or a case of the grip, when it has passed away, or an acute indigestion or colic, or those many ailments which a man may suffer from overeating or overdrinking; acute alcoholism, such as a man getting too much whisky on a sudden occasion, so he would not be habitually subject to it, would be a condition from which he would recover, and would not be a serious ailment, although a very inconvenient one while it lasted."

And further:

"Now, if Dr. Sale knew or believed or suspected that he had a serious ailment of this kind, and stated that he never had any bodily or mental infirmity, that would be a false statement, and would void this policy. On the contrary, if he did not know or believe or suspect it, and was acting honestly, in the belief that he had no physical infirmity, it would not be a breach of this statement, although he may have had a temporary ailment of any kind, which promptly yielded to treatment, and passed away with such treatment."

Then, in summing up the issues on both branches of the case (that is to say, upon the question as to whether the accident was the proximate and sole cause of the death, and upon the question of the truth of the statements in regard to the physical condition of the insured before and at the time of the issuance of the policy), he said:

"Now, if you find either one of these issues in favor of the defendant (that is to say, if you find that chronic Bright's disease combined with the injury as an efficient operative to produce death), why, then, your verdict should be for the defendant; or if you find there was false answer made to this statement in the fact that Dr. Sale at the time did have a serious bodily infirmity, namely, chronic Bright's disease, and that would be serious if he had it, if he knew it, or believed or suspected it, then in that case your verdict should be for the defendant."

These instructions were likely to convey and we think did convey to the jury the impression that the question was not whether the statements were true in fact, but whether the insured believed them to be true. It was correctly held by the court below, and it is not questioned here, that these statements were of things material to the risk. Nor can it be doubted that they were warranties, as distinguished from mere representations resting on the belief of the insured. Jeffries v. Life Insurance Co., 22 Wall. 47, 22 L. Ed. 833; Ætna Life Ins. Co. v. France, 91 U. S. 510, 23 L. Ed. 401; Provident Life Assurance Society v. Llewellyn, 58 Fed. 940, 7 C. C. A. 579; Security Life Ins. Co. v. Webb, 106 Fed. 808, 45 C. C. A. 648, 55 L. R. A. 122; Rice v. Deposit Co., 103 Fed. 427, 43 C. C. A. 270; Carstairs v. American Bonding, etc., Co. (C. C. A.) 116 Fed. 449; 1 Arnold on Insurance, 577; May on Insurance, § 156. The question was not, therefore, one of good faith on the part of the insured, and the warranty would not be fulfilled unless the fact was as stated. That part of the instruction which involved the knowledge of the insured in regard to the disease was specially excepted to, and was not corrected.

From another part of the judge's charge, we infer that he was of opinion that although a statement of the insured might be, in terms, a warranty, yet that, when applied to such a question as that of a man's health, had not the meaning it has when referring to an open and

visible fact, capable of demonstration, but was rather matter of opinion. His language was "that, according to the Moulor and Foster Cases, even a warranty, strictly so construed, with reference to the state of the assured's health, being, in its nature to an accident, matter of opinion, is somewhat different from a warranty as to the existence of a physical fact capable of demonstration and of definite knowledge." We suppose this reference is to Moulor v. American Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447. But that part of the opinion in that case bearing on such a question was employed arguendo, in demonstrating that the statements of the insured were not intended as a warranty of the facts, but as a warranty of the good faith of the insured in making them. The whole inquiry was determined when that result was reached. But here that question was settled by the terms of the policy, and there is no room left for the court to find, in doubtful phraseology, a meaning which may be cut down to a representation made of the honest belief of the insured. That has been done which Mr. Justice Harlan said insurers would have to do in order to lay such hard lines for the insured. "If," said he, "those who organize and control life insurance companies wish to exact from the applicant, as a condition precedent to a valid contract, a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowledge, and which even skillful physicians are often unable, after the most careful examination, to detect, the terms of the contract to that effect must be so clear as to exclude any other conclusion." Still, it must be said that questions and answers such as we are considering have generally been regarded as not extending to merely temporary derangements, but only to such diseases or disorders as become settled, and so liable to affect the vitality of the person. The answer which is expected corresponds to the object of making the inquiry, which is not to ascertain the unimportant and casual disturbances which may have happened to the health of the applicant, and which do not ordinarily have any lasting consequences, but only to those of such gravity as might reasonably excite an apprehension that his health and vigor might be affected thereby. This is the extent of the insurer's interest in the subject. And generally it would seem that the applicant would know whether he had been or then was subject to a malady of so grave a character. To be sure, that might not always happen. But at all events, the law is settled that the insurer may require the applicant to warrant himself to have been and to be sound in health, within the meaning of such questions as we are considering; and the applicant, if he chooses to accept the insurance upon those terms, is bound by them. And the law is generally that parties may impose such reasonable conditions to their contractual liability as they may agree upon, if they be not contrary to law.

It is true that the judge gave to the jury an instruction requested by the defendant as follows:

"The policy was issued in consideration of the warranties contained in it. If there was any breach of any of these warranties, that voids the policy, and there can be no recovery thereon. Subparagraphs 'j' and 'k' in section 16, on the back of the policy, are these:

" '(j) I have never had fits or disorder of the brain, vertigo or hernia, or any bodily or mental infirmity or disorder.

" '(k) My habits of life are correct and temperate, and I am in sound condition mentally and physically.'

"These are warranties, and if previous to the time of the issuance of the policy, June 15, 1900, the insured, Dr. Sale, had any bodily infirmity or disorder which was of a serious character, then this statement would not be true; and that would be a breach of the policy, which would discharge the defendant.

"Again, if at the issuance of this policy the said Sale was not in a sound physical condition (that is, if he then had a serious disease which might have permanently impaired his health), that would also be a breach of the warranty, and defeat recovery for plaintiff."

These instructions stated the law correctly. But the mere giving them without recalling or explaining the instructions given on the court's own motion would not be likely to remove the impression already made. In order to render an error harmless, it must be made to appear clearly that the party complaining of it was not prejudiced.

The difficulty created by inconsistent or contradictory instructions on a material point is, first, that it is impossible for the jury to know which is to be their guide; and, secondly, it is impossible after verdict to ascertain which instruction the jury followed. Bank of Metropolis v. New England Bank, 6 How. 212, 12 L. Ed. 409; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; Durant Min. Co. v. Percy Min. Co., 93 Fed. 166, 35 C. C. A. 252–255; 11 Encycl. of Pl. & Prac. 146, where the rule and its reasons are well stated and explained, and a great number of authorities are cited.

The instructions of the court in regard to the meaning and effect of the condition that the accident must be the proximate and sole cause of the death seem free from fault.

Certain questions relating to the admission of evidence are presented by the record. But as they may not arise in the same form upon another trial, we do not think it important to notice them.

For the error in the charge of the court herein noted, the judgment must be reversed, and a new trial awarded.