Burke, J.
 

 On April 10, 1953 Lawrence Weigandt applied to the Bronx Savings Bank for a policy of life insurance. In the application he stated that he had never had or been told that he had tuberculosis or any disease of the glands or bones. The same day a medical examiner for the bank examined Mr. Weigandt. He noted no deformity and found the applicant to be in apparent good health.
 

 On April 16, 1953 the application was approved by the bank’s medical consultant. The next day the policy with the application annexed thereto was delivered to the insured and the first premium was paid.
 

 On July 20,1953 the applicant jumped or fell from the roof of the building in which he resided and sustained injuries which caused his death. A subsequent autopsy disclosed that the applicant, Mr. Weigandt, had active tuberculosis of the spine on the date of his death.
 

 Thereafter the bank, relying on printed legends in the application, instituted this action to rescind the policy on the ground that, at the time he made the application, the applicant falsely represented that he was in good health; and on the ground that the policy did not take effect because when it was delivered to the applicant and the first premium was paid he was not in good health. The defendant, the named beneficiary and widow of the applicant, generally denied the allegations of the complaint and counterclaimed for the face value of the policy.
 

 In addition to the above facts it was established on the trial that the applicant was suffering from tuberculosis of the spine at the time he made the application, and that if this was known
 
 *549
 
 the application would not have been approved and the policy would not have been delivered. However, it was not established that the applicant knew or had reason to know of his condition.
 

 Special Term dismissed the complaint and awarded judgment to the defendant on her counterclaim. On appeal the Appellate Division unanimously affirmed and granted the plaintiff permission to appeal to this court.
 

 With respect to the first cause of action the plaintiff relies on the following legend which appears on the bottom of one of the pages of the application form: “ Except as stated above I am now in good health. The statements herein are true, fully and correctly recorded, and made for the purpose of inducing the Bank to issue insurance on my life.”
 

 It contends that this representation as to good health made by the insured was material and contrary to the fact; therefore it warrants rescission of the contract of insurance induced thereby even though innocently made. Its position is that, except as regulated by statute, a contract of insurance is like any other contract and governed by the same principles. Rescission is granted in other contracts whether or not the misrepresentation about which there is a mutual mistake of fact was knowingly made. Consequently, rescission should have been granted.
 

 We cannot agree with appellant’s position. A representation as to good health in an application for insurance, such as the one quoted above, is not an affirmation of fact and does not provide a basis for rescission in the absence of proof of actual fraud. Speaking of such representations in
 
 Sommer
 
 v.
 
 Guardian Life Ins. Co.
 
 (281 N. Y. 508), we said:
 

 “ The applicant does not guarantee the literal truth of the statement, nor do the parties condition their contract upon the existence of good health. The representation is not part of the contract; it is a ‘ statement inducing the formation of the contract as distinguished from an affirmation of fact or a promise incorporated in and material to the contract. ’ (3 Williston on The Law of Contracts [Rev. ed.], § 673; Vance on The Law of Insurance, pp. 389, 390; 4 Couch, Cyclopedia of Insurance Law, §§ 824, 885.) Such statements must be construed in the light of their purpose to furnish to the company information which will enable it to decide whether it shall make a contract of insurance in which the information furnished will not be incorporated as an affirmation of fact.
 

 
 *550
 
 “ The courts, both State and Federal, have generally construed statements that an applicant was in good health or free from disease as a representation only that the applicant in good faith believed and was justified in believing that his health was not impaired by any condition which would ordinarily be regarded as a ‘disease.’ The representation cannot reasonably be understood as intended to do more than convey to the company such information as the applicant might be expected to have and to give to the company that the applicant has had no symptom of disease which would, ordinarily, act as a warning or notice, even to a layman, that his health might be impaired in substantial degree, and assurance that the applicant, in good faith believes that he is in fact a well person.” (P. 514.)
 

 As the plaintiff failed to prove that the applicant knew or had reason to know that his health was substantially impaired at the time he made the application, the first cause of action was properly dismissed.
 

 Turning to the second cause of action, the appellant relies on the following printed legend on the bottom of the first page of the application:
 

 ‘ ‘ I agree that: 1. If the first premium has been paid when this application is delivered to the Bank and a conditional advance premium receipt has been issued by the Bank, the policy shall take effect as of the date of completion of the medical examination or the date of receipt of this application by the Bank if no medical examination is required, provided the Bank shall be satisfied that under its rules and standards the person to be insured was a risk acceptable to it on said date * * * and provided further that the person to be insured was in good health on said date.
 

 “2. If the first premium has not been so paid, the policy shall not take effect until the first premium is paid and the policy delivered while the person to be insured is in good health.”
 

 In affirming the dismissal of the second cause of action, the Appellate Division held that the above-quoted language was sufficiently ambiguous for Special Term to find that it was intended to mean that, in the absence of fraud, the policy would become effective upon payment of the first premium and delivery of the policy in the absence of an adverse intervening change of health where the applicant is given a medical examination and found to be in good health and the policy is delivered and the
 
 *551
 
 first premium, paid at a subsequent date. The appellant urges that this construction is erroneous and arises from a refusal to read the language as written though its intent is clear. It asserts that this language provides for three possible effective dates for the policy, depending upon when the premium is paid and whether a medical examination is required, and there is not an interval of time to consider. In each instance the person to be insured must be in good health on the significant date; what his health may have been before or what it may become thereafter is of no concern at all.
 

 Under the guides of construction enunciated by this court, as well as the caveats we have issued, there is sufficient ambiguity in the above-quoted clauses to uphold the conclusion reached by the Appellate Division. There is no doubt that an insurance company is entitled to have its contract enforced by the courts as written
 
 (Drilling
 
 v.
 
 New York Life Ins. Co.,
 
 234 N. Y. 234;
 
 Royster Guano Co.
 
 v.
 
 Globe & Rutgers Fire Ins. Co.,
 
 252 N. Y. 75;
 
 Johnson
 
 v.
 
 Travelers Ins. Co.,
 
 269 N. Y. 401). We have declared that in the absence of legislative restrictions an insurance company has the right to insert a condition precedent as plaintiff claims exists in the policy before us
 
 (Sommer
 
 v.
 
 Guardian Life Ins. Co. of America,
 
 281 N. Y. 508, 513,
 
 supra).
 
 In fact we have upheld the validity of such a condition
 
 (Drilling
 
 v.
 
 New York Ins. Co.,
 
 234 N. Y. 234,
 
 supra).
 
 “ But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import ”
 
 (Janneck
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 162 N. Y. 574, 577-578). “ The question is simply whether the average man in applying for insurance and reading the language of this policy at the time it was written would ascribe the meaning to that language which the insurance company here urges ”
 
 (Hartol Prods. Corp.
 
 v.
 
 Prudential Ins. Co.,
 
 290 N. Y. 44, 50). It is not enough if the applicant might have so construed it, provided it could reasonably be construed otherwise. To sustain the construction urged, the insurer has the burden of establishing that “ the words and expressions used not only are susceptible of that construction but that it is the only construction that can fairly be placed thereon.”
 
 *552
 

 (Hartol Prods. Corp. v. Prudential Ins. Co.,
 
 290 N. Y. 44, 49,
 
 supra).
 
 This it has failed to do.
 

 The policy in this case admits of such ambiguity. The clause numbered “ 1 ” expresses an intent upon the part of the insurer to cover the risk on the date of the medical examination if the first premium is paid with the application and the applicant is in good health at that time and the insurer approves the application. Thus a person reading it could reasonably interpret the dominant intent of this clause to be that the insurer is willing to accept the risk if the medical examination proves satisfactory and the answers to the questions in the application do not persuade it to take a contrary view. Therefore, where everything required by this clause is accomplished and satisfactory to the insurer but the payment of the first premium and delivery of the policy, a person might reasonably read the clause marked
 
 “ 2 ”
 
 as intending to mean that he is an acceptable risk if there is no change in his health between the time of the medical examination and the delivery of the policy and payment of the first premium. This is not only inferable from the fact that this clause follows clause “ 1 ” in immediate sequence and it refers to clause “ 1 ” by providing that' “ if the first premium is not so paid ” and ‘ ‘ the policy shall not take effect until ’ ’, as pointed out by the Appellate Division, but also because it provides that these things must be done
 
 “ while the person to be insured is in good health ”
 
 (emphasis added). This latter expression certainly connotes a period or interval of time which might be reasonably interpreted as intending to relate the condition of the applicant on the date of the delivery of the policy back to his condition on the date of the medical examination when he was found to be in good health. As this ambiguity is attributable to the insurer, it must be resolved against it.
 
 (Hartol Prods. Corp.
 
 v.
 
 Prudential Ins. Co.,
 
 290 N. Y. 44,
 
 supra; Griffey
 
 v.
 
 New York Central Ins. Co.,
 
 100 N. Y. 417;
 
 Darrow
 
 v.
 
 Family Fund Soc.,
 
 116 N. Y. 537, 544;
 
 Matthews
 
 v.
 
 American Central Ins. Co.,
 
 154 N. Y. 449, 456;
 
 Janneck
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 162 N. Y. 574,
 
 supra; Silverstein
 
 v.
 
 Commercial Cas. Ins. Co.,
 
 237 N. Y. 391.)
 

 Appellant also urges that it is error to construe these clauses in this manner because they set up a condition precedent and are not in the nature of a representation. In effect its argument is that changes in health have nothing to do with the case; the applicant must in fact be in “ good health ” on the crucial date
 
 *553
 
 or the policy does not take effect. In other words ‘1 good health ’ ’ where it is a representation means apparent or subjective good health, but 44 good health ’’where it is a condition precedent such as here, means good health in fact or objective good health. The difficulty with this contention is that placing a legal conclusion on the words used in this policy does not change their meaning or the manner in which they might reasonably be construed by an average person who would purchase such a policy
 
 (Hartol Prods. Corp.
 
 v.
 
 Prudential Ins. Co., supra).
 
 An insurér may, 4 4 when not restricted by the Legislature, condition the valid inception of a contract of insurance upon the existence at the time of perfect and complete health, free even from temporary slight impairment; but such * * * condition should be phrased in clear and unequivocal terms ”
 
 (Sommer
 
 v.
 
 Guardian Life Ins. Co.,
 
 281 N. Y. 508, 513-514,
 
 supra).
 
 In
 
 Drilling
 
 v.
 
 New York Life Ins. Co.
 
 (234 N. Y. 234,
 
 supra),
 
 we had an opportunity to construe a 44 good health ” clause as a condition precedent and upheld its validity. However, we indicated there that if the clause was not worded otherwise it would merely mean apparent good health. (See
 
 Drilling
 
 v.
 
 New York Life Ins. Co., supra,
 
 p. 239). It would be manifestly unjust to have a policy of life insurance so ambiguous that it would lead a person to believe that he is insured and then seek to rescind it after his life expires on the ground that it is not to be interpreted in a manner in which he might reasonably have interpreted it. He cannot then be placed in a position of
 
 status quo ante.
 
 It is too late then for him to seek other insurance. An insurer is entitled to protect itself against risks it does not wish to take so that it can accurately predetermine its premium rates. But it must manifest its intent to exclude such risks in clear, unequivocal terms. The clause before us does not meet this test.
 

 The judgment should be affirmed, with costs.
 

 Conway, Ch. J., Desmond, Dye, Fuld, Froessel and Van Voorhis, JJ., concur.
 

 Judgment affirmed.