**CONTINENTAL CASUALTY COMPANY,**
Appellant,

v.

**Virginia Patterson BEELAR, M. D.,**
Appellee.

**No. 21660.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1968.

Decided Nov. 26, 1968.

Mr. William Clague, Washington, D. C., with whom Mr. Francis C. O'Brien, Washington, D.C., was on the brief, for appellant.

Mr. Herbert E. Marks, Washington, D.C., with whom Mr. Angelo A. Iadarola, Washington, D.C., was on the brief, for appellee.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and ROBINSON, Circuit Judge.

PER CURIAM:

This action was brought to recover benefits allegedly due under a group disability income policy issued by the appellant. The District Court granted plaintiff's motion for summary judgment. Defendant attacks the order solely on the issue of plaintiff's eligibility for coverage under the policy provision requiring her to be "actively performing the full-time duties of [her] occupation."

Plaintiff, a licensed physician, practiced privately from 1949 to 1961, at which time she suspended her practice to undergo a back operation. During her convalescence she moved her office, making substantial investments in space, alterations, and equipment. She notified her patients in March of 1962 that she was returning to practice, and actually began seeing patients on September 7, 1962. On September 24, plaintiff applied for the insurance policy involved, which was advertised as available to members of the American Medical Association "regardless of your past medical history." Defendant's application form contained the question, "Are you now

actively engaged in your occupation on a full time basis?" to which plaintiff answered "yes." Defendant issued its policy effective October 15, 1962, containing the following provision: " 'Eligible Member' * * * means a member [of the A.M.A.] * * * who is actively performing the full-time duties of his occupation."

From September 1962 until March 1963 (except for an absence during November and December for a neck operation) plaintiff spent full days at her office five days per week and additional time on weekends, seeing an average of about 20 paying patients per month, most of whom she examined exhaustively. She did much of her own laboratory work (to aid diagnosis) and office work (apparently to reduce overhead). In March 1963, plaintiff was forced to discontinue her practice because of pain and complications resulting from the November neck surgery. Her claim under the policy was rejected.

Defendant does not contest these facts but rather contends: (1) that it is reasonable to infer that plaintiff never *intended* to reestablish a full-time active practice,[1] (2) that this presents a genuine issue of material fact, and (3) that summary judgment was therefore improperly granted. Although we agree with the first contention, we are not persuaded that the conflicting inferences pose a material fact issue. Accordingly, we affirm.

■ On a motion for summary judgment, any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Isen v. Calvert Corp., 126 U.S.App.D.C. 349, 379 F.2d

126 (1967). If the inferences thus drawn would preclude a judgment for the movant, then a genuine issue of material fact exists and summary judgment must be denied. In our opinion, however, the inferences most favorable to defendant in this case would *not* preclude recovery by plaintiff, because we interpret the policy to make irrelevant plaintiff's state of mind.

■■ Since no extrinsic evidence was adduced concerning the intent of the parties, the construction of the phrase "actively performing the full-time duties of his occupation" is for the court. Hamilton v. Liverpool, London & Globe Ins. Co., 136 U.S. 242, 255, 10 S.Ct. 945, 34 L.Ed. 419 (1890); Porello v. United States, 94 F.Supp. 952, 954 (S.D.N.Y.1950). We are guided in this task by the rule of construction that ambiguities in insurance contracts are resolved favorably to the insured (Langdon v. Maryland Cas. Co., 123 U.S.App.D.C. 140, 357 F.2d 819 (1966); Love v. American Cas. Co., 113 U.S.App.D.C. 195, 306 F.2d 802 (1962)), and the corollary that, if there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage. *See* General Cas. Co. v. Azteca Films, Inc., 278 F.2d 161 (9th Cir.), cert. denied, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960); Bronx Savings Bank v. Weigandt, 1 N.Y.2d 545, 154 N.Y.S.2d 878, 136 N.E.2d 848, 60 A. L.R.2d 1422 (1956). These rules are meant to protect those who are lulled into a reasonable belief that they are insured, only to discover too late that the insurer takes a different view of the policy requirements.

■ We need not dwell on the various possible constructions of the policy, since we conclude that it may reasonably be read to cover plaintiff's practice. "Ac-

---

1. As the basis for this inference, defendant stresses the following additional facts: (1) plaintiff stated that an income of $500 per month from her practice was adequate, since she was not the family breadwinner; (2) in June 1962, before she resumed practice, plaintiff resigned her position as director of an arthritis clinic; (3) both before and after resumption of her practice, plaintiff rented her new office to other physicians to use in evenings and occasional afternoons.

tive" (in contrast to inactive) is reasonably understood to include thoroughly examining 20 patients per month. "Full-time" (in contrast to part-time) is reasonably understood to encompass spending a full work week and some weekends in the office, plus remaining on call at other times. And, since the policy is silent as to the state of mind of the insured, it is reasonably understood to make irrelevant the question of intent. Thus, regardless of plaintiff's subjective state of mind, the undisputed objective facts conclusively establish her right to recover.

Moreover, we reach the same conclusion even without the rule of construction favoring coverage. That is, the interpretation we adopt is not only *a* reasonable reading but also the *most* reasonable reading under the circumstances. This group policy apparently was intended to cover a large number of physicians engaged in a variety of medical practices. To view it as covering only typical practitioners would be to exclude all those whose practice in some way departs from the ordinary or falls short of the average. The more likely intention was to cover any physician who, regardless of his professional eccentricities, devotes full working time to his practice and sees patients fairly regularly.

Also, it is more reasonable to read the policy as establishing objective rather than subjective criteria for active, full-time medical practice. Absent an express and unambiguous provision, we are unwilling to infer a requirement that would hinge recovery on the indeterminate ability to prove or disprove the intent of the insured. Indeed, we fail to see what intent would be involved. Is the question the insured's expectations as to future development of the practice? Is it his personal thought as to whether his present activities constitute "full-time practice"? Neither seems relevant to insurance coverage.

Affirmed.