COLUMBIA CASUALTY
COMPANY, Plaintiff,

v.

COLUMBIA HOSPITAL FOR
WOMEN, Defendant.

Civ. A. No. 83–3045.

United States District Court,
District of Columbia.

April 30, 1986.

James C. Gregg, Washington, D.C., for plaintiff.

Lee Ellis and Jeffrey S. Holik, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

This case, which was transferred to this Court from Judge Corcoran, involves an attempt to recover money paid under an insurance policy. In January, 1983, plaintiff paid $599,947.51 to settle *Erby, et al. v. Columbia Hospital for Women*, No. 82–0799 (D.D.C.), a medical malpractice case. Plaintiff contends that the claim at issue in *Erby* was not within the policy coverage and seeks recovery of the settlement payment. Plaintiff has moved for summary judgment as to all counts; defendant has moved for partial summary judgment.

## I. BACKGROUND

In January, 1982, defendant purchased an excess liability insurance policy from plaintiff which provided retroactive cover-

age from November 14, 1976 to January 14, 1982 for claims arising out of hospital professional services. The policy included two exclusion provisions: first, that it did not cover "any claim pending on the effective date of this policy," and second, that it did not cover claims arising from "any event, if on such effective date, an insured has been advised or received notice that a claim will result therefrom." The effective date of the policy was January 14, 1982.

The *Erby* case was filed on March 22, 1982. Defendant notified plaintiff of the case on August 23, 1982, and plaintiff began its defense of defendant in October, 1982. In November, plaintiff informed defendant that it would continue to "investigate and review" the case subject to reservation of its rights to disclaim coverage because of untimely notice. *Erby* was settled in January, 1983, with all parties participating. Defendant paid $1 million from its self-insurance; plaintiff paid $599,947.51 under the excess liability policy.

On October 14, 1983, plaintiff filed a two-count complaint against defendant, seeking recovery of the settlement payment and alleging breach of contract and breach of duty to insurer. Both counts arose from defendant's asserted failure to give timely notice of the *Erby* claim.

During discovery, plaintiff deposed Robert Sloan, associate administrator of Columbia Hospital, who disclosed that the Medical Records Office of the Hospital had received a letter from Erby's attorney in November, 1981. The letter stated: .

As per our telephone conversation of 2 November 1981, enclosed herewith is a Medical assignment and authorization allowing the release of [Erby's] medical records to this office.

I am requesting that these records be sent out as quickly as possible due to the present course of treatment for cancer at Georgetown University Hospital. We are requiring [sic] the records on Mrs. Erby for the purpose of seeking alternative modes of treatment and medical opinions through our own physicians....

Discovery also revealed that, after receiving the letter, defendant opened a "potential claims file" on Mrs. Erby one month before the January 14, 1982 effective date of the policy.

Plaintiff later amended its complaint to add count III, which asserts that plaintiff is entitled to recovery because defendant had received notice of the *Erby* claim prior to the effective date and that the claim thus falls within the exclusion provisions of the policy. Defendant moved to dismiss count III on the ground that plaintiff's failure to reserve its rights in the exclusion provisions before undertaking defense of the *Erby* case constituted waiver and estoppel. Judge Corcoran denied the motion on March 27, 1985, noting that plaintiff conceivably could prove a set of facts entitling it to recover under count III.

## II. DISCUSSION

The pending motions focus on two issues. The first is whether defendant breached the policy by not notifying plaintiff of Erby's March 22, 1983 claim until August, 1983. Plaintiff has moved for summary judgment on this issue. The second issue is whether the *Erby* matter was within the exclusion provisions. Both parties have moved for summary judgment on this issue.

### A. *Breach of Notice Provisions*

The insurance policy includes two notice provisions:

1. The insured shall give immediate written notice to the Company of any claim which involves or is likely to involve this policy. The notice shall identify the Insured and contain reasonably obtainable information with respect to the time, place and circumstances of the claim including the name of the complainant and of available witnesses.

2. If suit is brought against the Insured, the Insured shall immediately forward to the Company a complete copy of every demand, notice, summons or other process received by him or his representative, whether or not the suit involves or

is likely to involve the limit of liability afforded by this policy.

Plaintiff argues that, as a matter of law, defendant's five-month delay in notifying plaintiff of the *Erby* case violated these provisions and therefore entitles plaintiff to judgment.

In the District of Columbia, notice provisions in insurance contracts are deemed "of the essence of the contract" and are given effect "to promote the efficient and economic liability insurance administration." *Diamond Service Co. v. Utica Mutual Ins. Co.*, 476 A.2d 648, 652 (D.C.App.1984). Unambiguous notice provisions thus "have been judicially expressly effectuated in this jurisdiction." *Waters v. American Automobile Ins. Co.*, 363 F.2d 684, 686 (D.C.Cir. 1966).

Defendant argues that there is a factual question whether plaintiff should have had actual notice of the *Erby* claim in January, 1982. At that time, Thomas Porterfield, an auditor for plaintiff, reviewed defendant's files. One of defendant's employees has testified that the *Erby* file was made available to Porterfield; Porterfield has testified that he did not recall seeing that file, but that he did not review all files made available to him. Accordingly, defendant argues, there is a factual dispute regarding whether, with reasonable diligence, plaintiff could have had actual notice of the *Erby* matter in January, 1982.

Defendant argues that this question is material in light of *Lee v. Travelers Ins. Co.*, 184 A.2d 636, 639 (D.C.Mun.Ct.App. 1962), which held that, when an insurer received actual notice of a claim, the insured's failure to give proper notice would not bar recovery "unless such noncompliance has materially harmed the insurer." Under *Lee*, if plaintiff should have received actual notice of the *Erby* claim, it cannot assert breach of the notice provisions to avoid liability.

Defendant also asserts that there are factual questions about whether plaintiff adequately reserved its rights to assert breach of the notice provisions. Plaintiff failed to reserve its rights until three months after it received notice, and plaintiff retained counsel for defendant without mentioning any notice problem. In addition, plaintiff's November 29, 1982 letter stated merely that it would continue to "investigate and review" the case subject to reservation of its rights. Defendant contends that plaintiff's subsequent control of the litigation and settlement of the case exceeded "investigation and review" and thus could constitute waiver. Defendant also notes that plaintiff failed to obtain a non-waiver agreement.

■ Waiver "is an act or course of conduct by the insurer which reasonably leads the insured to believe that the breach will not be enforced," while estoppel "generally results when an insurance company assures that defense of an action or claim, with knowledge of a defense of non-liability under the policy." *Diamond Service Co.*, 476 A.2d at 654; *see also Salus Corp. v. Continental Casualty Co.*, 478 A.2d 1067 (D.C.App.1984). Plaintiff's three-month delay in reserving its rights, its defense of defendant prior to reserving its rights, and its failure to obtain a non-waiver agreement thus raise factual questions material to a finding of waiver or estoppel.[1]

Accordingly, because there are factual questions as to receipt of actual notice, waiver, and estoppel, plaintiff's motion for summary judgment on the notice issue is denied.

## B. *Exclusion of Pre-existing Claim*

Both parties seek summary judgment as to whether the *Erby* matter was excluded from coverage under the exclusion provisions. Since arguments advanced by both parties rely upon the language of the exclu-

---

1. Plaintiff cites *James v. Pennsylvania General Ins. Co.*, 349 F.2d 228, 230 (D.C.Cir.1965), for the proposition that, absent "a showing of prejudice by [the insured], the [insurer's] prompt notification to the insured that it was defending the lawsuit without prejudice to a later denial of coverage was sufficient to prevent estoppel." Here, however, plaintiff's notification was not prompt. *James* therefore does not preclude a finding of estoppel in this case.

sion provisions, it may be helpful to set them out in full:

C. In addition to all the exclusions stated in the policy, the following exclusions shall also apply to insurance provided by this policy:

(a) any claim pending on the effective date of this policy,

(b) any event, if on such effective date, an insured has been advised or received notice that a claim will result therefrom[.]

Plaintiff argues that the above-quoted language clearly encompasses the *Erby* case. Defendant argues that the terms of the exclusion provisions are ambiguous and must be construed so as not to apply to the *Erby* matter.

 It is well-settled that "ambiguities in insurance contracts are resolved favorably to the insured" and that "if there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage." *Continental Casualty Co. v. Beelar*, 405 F.2d 377, 378 (D.C.Cir.1968) (per curiam); *see also Meade v. Prudential Ins. Co.*, 477 A.2d 726 (D.C. App.1984). Both of the instant exclusion provisions refer to "claims," a term that is not defined in the policy. "Claim" thus is an ambiguous term, and plaintiff has offered no extrinsic evidence to clarify its meaning. *See Beelar*, 405 F.2d at 378. As such, defendant is "entitled" to any reasonable reading of the provisions that favors coverage.

One reasonable reading of "claim" is that it encompasses only actual, stated claims for relief, and not the type of indeterminate, hypothetical matter presented here. Prior to the effective date of the instant policy, defendant's only notice of

the *Erby* matter was the letter from Erby's lawyer. That letter simply sought medical records and did not state that a "claim" would be brought.

In addition, defendant notes that the parties negotiated a change in the language of the second exclusion provision. The standard language excluded "[a]ny event an insured could expect that a claim *might* result therefrom" (emphasis added). Mr. James Willging, an underwriter for plaintiff, testified that "might" was changed to "will" in order to "not unduly penalize [the defendant] for [its] efforts to identify potential claims at an early stage."

In addition, Mr. Porterfield's auditing visit suggests that plaintiff itself did not view the establishment of a potential claims file as bringing a matter within the exclusion provisions. Mr. Porterfield reviewed defendant's potential claims files on a case-by-case basis, excluding some from coverage and not excluding others. If, as plaintiff urges, creation of a potential claims file necessarily brought a matter within the exclusion provisions, Mr. Porterfield's individualized review of such files would have been quite unnecessary.

The ambiguity of "claim," the parties' negotiation of more stringent language, and Mr. Porterfield's audit all support the conclusion that the policy must, as a matter of law, be construed so as *not* to exclude the *Erby* matter. The Court therefore will deny plaintiff's motion as to Count III and grant defendant's motion for summary judgment as to that count.[2]

---

2. Plaintiff objects that this holding is somehow precluded by "the law of the case," because of Judge Corcoran's order disposing of defendant's motion to dismiss. This argument is meritless. Judge Corcoran's decision nowhere discussed the proper construction of "claim," and there is nothing to suggest that issue was "litigated and decided" so that the "law of the case" applies. *United States v. U.S. Smelting Refining and Mining Co.*, 339 U.S. 186, 198–99, 70 S.Ct. 537,

544–45, 94 L.Ed. 750 (1950); *National Souvenir Center v. Historic Figures, Inc.*, 728 F.2d 503, 510 n. 3 (D.C.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984). Moreover, denial of a motion to dismiss does not preclude a later grant of summary judgment. *Cf. Brownfield v. Landon*, 307 F.2d 389, 393 (D.C.Cir.), *cert. denied*, 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962).