Esther LaTORRE, Plaintiff–Appellee,

v.

**CONNECTICUT MUTUAL LIFE INSURANCE CO.,** Defendant–Appellant.

No. 93–3365.

United States Court of Appeals, Eleventh Circuit.

Nov. 18, 1994.

Robert R. McDonald, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, FL, for appellant.

James T. Harrison, Jr., Tallahassee, FL, for appellee.

Before HATCHETT and BLACK, Circuit Judges, and YOUNG *, Senior District Judge.

HATCHETT, Circuit Judge:

Appellant, Connecticut Mutual Life Insurance Company (Connecticut Mutual), appeals the decision of the district court granting summary judgment to Esther LaTorre (The Beneficiary) in an action to recover under an insurance policy. We affirm.

## FACTS

On February 8, 1989, Mario LaTorre, a New York resident, applied to Connecticut Mutual Life Insurance Company for a life insurance policy. The application contained the following provision: "If a premium is paid with this application, the Company's liability is stated in a Conditional Advance Premium Receipt." After completing Parts One and Two of the application and upon payment of the annual premium, Mario La-

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

Torre received a Conditional Advance Premium Receipt dated February 8, 1989. The receipt provided that coverage would begin "at the later of the completion of the Application Part I and Part II including the completion of any physical examination required when the Part II is first completed." The district court found that neither party contended that Mario LaTorre was required to submit to a physical examination. Therefore, the district court assumed that he received limited coverage under the applied for policy on February 8, 1989. The conditional receipt provided that terms of the applied-for policy would govern Connecticut Mutual's liability, "except as limited by this receipt." The receipt contained several limiting provisions, but did not mention an incontestability clause.

On February 22, 1989, Connecticut Mutual issued the formal insurance policy to Mario LaTorre. It contained an incontestability clause providing that Connecticut Mutual "cannot contest this policy, except for non-payment of premium after it has been in force during the lifetime of the Insured for a period of two years from the Date of Issue." The policy also established February 22, 1989, as the date of issue.

Mario LaTorre died on February 15, 1991. At the time of his death, more than two years had passed since he completed the application, paid his first premium, and received the conditional receipt; but, he died less than two years after Connecticut Mutual issued the formal policy of insurance. Connecticut Mutual exercised its purported right to contest coverage under the policy and refused to pay the policy benefits on the grounds that Mario LaTorre had allegedly failed to disclose on his application that he suffered from acquired immune deficiency syndrome (AIDS). Connecticut Mutual claimed that the incontestability clause did not become effective until the date of issue established by the formal policy, February 22, 1989; therefore, the two year contestability period had not yet lapsed when Mario LaTorre died. Thus, Connecticut Mutual asserted the right to deny coverage based on Mario LaTorre's alleged misrepresentations and omissions.

## PROCEDURAL HISTORY

The beneficiary filed a declaratory judgment action in a Florida state court to determine the right to payment under the policy. Pursuant to 28 U.S.C. § 1441(a), Connecticut Mutual removed the action to federal district court where the beneficiary subsequently filed a motion for summary judgment. The district court determined that the contestability period should be measured from the date of issuance of the conditional receipt. The district court noted that its finding was consistent with New York law requiring that the application, conditional receipt, and policy be read together as one contract. The district court also ruled that the ambiguity concerning whether the incontestability clause went into effect on February 8, 1989, the date of issuance of the conditional receipt, or February 22, 1989, the date of issue in the formal policy, should be construed against Connecticut Mutual. Because Mario LaTorre's death occurred more than two years after February 8, 1989, the district court held that Connecticut Mutual was barred from using his alleged misrepresentations and omissions as a basis for contesting the beneficiary's claim for death benefits.

## CONTENTIONS

Connecticut Mutual contends that the two year incontestability clause became effective on the date of issue stated in the formal policy rather than the date the application for the policy was completed and the conditional receipt issued.

The beneficiary contends that the incontestability clause became effective on the date Mario LaTorre received the Conditional Advance Premium Receipt, and that the application, taken as a whole, embodies an ambiguity as to the effective date of the incontestability clause. Moreover, because Mario LaTorre had no way to resolve this apparent ambiguity, the ambiguity should be interpreted against Connecticut Mutual.

## ISSUE

The sole issue on appeal is whether the two year incontestability clause became effective on the date of issue stated in the

policy rather than the date the application for the policy was completed and a conditional advance premium receipt received.

## DISCUSSION

We review the district court's grant of summary judgment *de novo* and apply the same standards as those controlling the district court. *Canadyne–Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1554 (11th Cir.1993). Summary judgment is proper pursuant to Federal Rules of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

▮▮▮ In diversity cases, a federal court applies the law of the forum in which it sits. *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir.1983). Thus, in resolving this case, the district court properly looked to Florida law. Florida adheres to the traditional rule that the legal effects of terms of the insurance policy and rights and obligations of persons insured thereunder are to be determined by the law of the state where the policy was issued. *Wilson v. Insurance Co. of North America*, 415 So.2d 754, 755 (Fla.2d Dist.Ct.App.1982). Since Mario LaTorre purchased the policy of insurance in New York, the substantive law of that state governs the resolution of this dispute.[1] Under New York's insurance code, with certain exceptions not relevant here, all life insurance policies must provide in substance:

> (3) that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue ...
>
> (4) that the policy, together with the application therefor if a copy of such application is attached to the policy when issued, shall

constitute the entire contract between the parties....

N.Y.Ins.Law § 3203(a)(3)–(4) (McKinney 1989). The phrase "date of issue," as used in the incontestability provision, is not defined in the statute.

In *American National Ins. Co. v. Motta*, 404 F.2d 167 (5th Cir.1968), the Fifth Circuit resolved a similar issue which arose under Florida law. In *Motta*, the insured committed suicide more than two years after receiving a conditional receipt, but less than two years after the policy issue date. The policy provided that the it "shall be incontestable after two years from the Policy Issue Date." It also provided that "[de]ath of the Insured from suicide within two years from the Policy Issue Date ... shall limit the Company's liability...." *Motta*, 404 F.2d at 168. The policy also established a policy issue date. The applicable Florida law in *Motta* required each life insurance policy to have an incontestability clause establishing a contestability period of two years from the date of issue. Florida law also provided that the life insurance policy together with an attached application constituted the entire contract between the parties. The insurance company in *Motta* sought to deny the claim, relying on language in the policy's suicide clause which expressly tied the suicide exclusion period to the policy issue date. The company argued that the two year suicide exclusion period ran from the designated issue date and not from the earlier date of the conditional receipt. Because Motta had committed suicide less than two years from the policy issue date, the company claimed it could deny the claim.

The Fifth Circuit found that the suicide exclusion clause became effective on the date the conditional receipt was issued. The court thought Florida's statutory requirement that all insurance policies contain a two year contestability period, mandated this result. In the court's view, the two year contestability period commenced when the risk of loss attached to the insurer: the date when the insured paid a premium and received the conditional receipt. The court

---

1. The parties have not cited, nor did the district court find, any New York cases that are precisely on point.

found that the purpose of the contestability provision of the statute was to forbid the extension of a contestable clause for a period greater than two years from the date risk of loss attached. *Motta*, 404 F.2d at 169. The court, therefore, concluded that the effective dates of the policy's suicide and incontestability clauses would have to be the same. The court reasoned that to allow the suicide exclusion period to run from the policy issue date would have the effect of establishing two contracts rather than one. The second contract under the formal policy would contain the suicide clause; the first contract, under the conditional receipt, would not. The court concluded that such an outcome would be in direct conflict with Florida law which required every life insurance policy to contain a two year incontestability clause, but also required that the life insurance policy, along with the accompanying application for insurance, be construed as a single contract.

The Fifth Circuit also found an ambiguity in Motta's insurance contract and noted that under Florida law ambiguities in insurance contracts must be resolved in favor of the insured. The court noted that the conditional receipt given to Motta stated that it was "subject to the terms of the policy." The receipt, however, was not clear as to which terms from the applied-for policy would apply to the insured during the period between the application and issuance of the policy. The court concluded that the suicide and incontestability periods in Motta's policy had to begin to run on the date coverage commenced and not on the date the policy was issued, and thus barred the company from denying coverage.

The Fifth Circuit's reasoning in *Motta* persuades us. New York law requires that ambiguities in contracts of insurance be resolved in favor of the insured and against the insurer. *Lavanant v. General Accident Ins. Co. of America*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992). Here, as in *Motta*, the insurance contract contains an ambiguity. The application, incorporates the conditional receipt which provided that the terms of the applied-for policy, "except as limited by the receipt," became effective the day the application was completed, February 8, 1989. The conditional receipt did not contain any limiting language concerning the incontestability clause.[2] In contrast, under the terms of the formal policy that was part of the same contract, the contestability period began to run on the date the formal policy was issued, February 22, 1989. Consequently, the policy made the incontestability provision effective on one date, while the application appeared to make that same provision effective on another date. Therefore, Mario LaTorre, at the time he received the conditional receipt, had no way of knowing that the incontestability clause did not become effective on that date, or that Connecticut Mutual, should subsequent litigation ensue, would seek to deny coverage on the grounds that the clause became effective at a future date that was to be determined solely by the vagaries of Connecticut Mutual's underwriting approval process. He could have been under the eminently reasonable belief, given the conditional receipt's failure to state otherwise, that the contestability period was one of the terms of the applied-for policy that became effective upon his receipt of the conditional receipt. New York's highest court described the test of whether an insurance policy is ambiguous in the following terms: "The question is simply whether the average man in applying for insurance and reading the language of th[e] policy at the time it was written *would* ascribe the meaning to that language which the insurance company ... urges." *Bronx Savings Bank v. Weigandt*, 1 N.Y.2d 545, 154 N.Y.S.2d 878, 883, 136 N.E.2d 848, 851 (1956) (emphasis added). We are satisfied that an ordinary applicant would not know how to interpret the contract's seemingly inconsistent provisions.

Connecticut Mutual contends that the conditional receipt is not part of the policy but is merely "a bridge until such time as the policy is issued." Connecticut Mutual's solution does resolve the ambiguity concerning the effective date of the incontestability clause, but creates two separate and distinct con-

2. The application did, however, expressly limit the amount of Connecticut Mutual's coverage

liability until the applied-for policy was issued.

tracts of insurance. We reject such an approach as being in contravention of New York's apparent public policy interest in having one contract govern its insurance transactions.

## CONCLUSION

We therefore construe the ambiguity as to the date when the contestability period commenced against Connecticut Mutual and hold that the two year contestability period at issue in this case commenced on the date coverage began under the conditional receipt, February 8, 1989. We note that this finding is consistent with New York law which requires not only that the application, conditional receipt, and policy be read together as one contract, but also that the resulting contract contain an incontestability clause providing for a two year contestability period. Our decision implements the spirit of the New York statute while construing the several documents as one contract. *See Motta,* 404 F.2d at 169.

The insured's death having occurred more than two years after February 8, 1989, Connecticut Mutual was barred from using the insured's alleged misrepresentations and omissions as a basis for contesting the beneficiary's claim for death benefits.

The judgment of the district court is affirmed.

AFFIRMED.

BLACK, Circuit Judge, specially concurring:

I concur in the result.

GEORGE C. YOUNG, Senior District Judge, dissenting:

The insured in this case, Mario D. La-Torre, applied for a $100,000 life insurance policy with disability income insurance. At the time of the application he paid a $158.00 premium for the life insurance and $211.42 for the disability income insurance. The appellant, Connecticut Mutual Life Insurance Company, issued a Conditional Advance Premium Receipt at the time of the payment on February 8, 1989. Thereafter, on February 22, 1989 the company issued its policy which contained an incontestability provision as follows:

> We cannot contest this Policy, except for nonpayment of premium after it has been in force during the lifetime of the insured for a period of two years from the Date of Issue.

On February 15, 1991 the insured died, more than two years after the Conditional Advance Premium Receipt had been issued, but less than two years after the issue date of the policy. The company refused to pay the insurance to the insured's beneficiary because it is alleged that Mr. LaTorre had failed to disclose on his application that he had Acquired Immune Deficiency Syndrome (AIDS).

The Conditional Advance Premium receipt issued by the company to the insured at the time of the application for the policy on February 8, 1989 provided:

> The purpose of this receipt is to provide a LIMITED amount of insurance coverage while we review the Application and other information to decide if we can issue the policy(ies) applied for. Because this receipt gives protection to persons whether or not insurable on a standard basis, we LIMIT coverage while we evaluate the Application and before the coverage under this receipt ends as specified below. This receipt does not commit us to issue any policy(ies) other than according to our usual underwriting standards. Nor are we obligated to provide insurance benefits where health or other conditions affecting insurability have been misrepresented.

> .        .        .        .        .

> WHEN COVERAGE ENDS—Coverage ends on the EARLIEST of the following dates:

> 1. Sixty days after the date of this receipt if any evidence of insurability we requested has not been given to us, or

> 2. The date we issue the policy(ies) as applied for, or

> 3. Thirty days after we issued a policy offering insurance on a basis different from that applied for or, if SOONER,

upon your acceptance or rejection of any such offer, or

4. The date we reject the Application. Rejection is effective when you or the proposed insured receive oral notice. If the notice is mailed, rejection will be effective upon the earlier of: the date you receive such notice or; 5 days after such notice is mailed.

In this case the insured, Mario D. La-Torre, was issued a limited conditional coverage pursuant to the terms of the Conditional Advance Premium Receipt. As set forth above, this coverage ended either sixty (60) days after the date of the receipt if evidence of insurability requested by the insurer had not been produced, or the date the policy was issued, or the date the application was rejected, or thirty (30) days after the issuance of a policy on different terms than those applied for. The result was that there were two contracts: first, one for temporary coverage pending a determination of insurability by the company, and secondly, the policy applied for. In this respect, there is a difference from the finding of *American National Insurance Company v. Motta*, 404 F.2d 167 (5th Cir.1968), wherein the court found that neither party intended a two-contract arrangement and that therefore the two-year period of contestability commenced with the date of application for insurance.

The insurance policy issued to Mr. La-Torre provided that the "Policy Date" was February 22, 1989, and further provided the "Date of Issue" was February 22, 1989, and that the "Final Expiration Date" was February 22, 2024. By the specific terms of the Conditional Advance Premium Receipt, the limited coverage provided by that receipt had ended. LaTorre had ten days after the receipt of the policy to return it to the company and have the premiums paid returned to him.

I find no ambiguity in the terms as above set forth and believe that the two-year period within which the company could contest its obligation to pay commenced on February 22, 1989, and that, therefore, the summary judgment granted by the district court

should be reversed and the case remanded for further proceedings.

Accordingly, I respectfully DISSENT.