**BERKSHIRE LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Richard OWENS, Defendant.**

**No. 94 Civ. 7556 (LAK).**

United States District Court,
S.D. New York.

Jan. 10, 1996.

George Berger and Bruce J. Turkle, Phillips Nizer Benjamin Krim & Ballon, New York City, for Plaintiff.

Turner P. Smith, Barbara J. Buono, and Charlene R. Jackson, Curtis, Mallet–Provost, Colt & Mosle, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

■ The principal issue presented here is whether an individual who has tested positive for the human immunodeficiency virus ("HIV"), and who states on an application for disability insurance that he or she is "in good health to the best of my knowledge and belief," thereby commits fraud as a matter of law. Concluding that the question, on this record, is one of fact, the Court denies cross-motions for summary judgment, which seek to void and establish coverage under the policy, respectively.

### Facts

Plaintiff Berkshire Life Insurance Company ("Berkshire") issued a disability income insurance policy to defendant Richard Owens in February 1991. In September 1991, Owens learned from a counselor that his blood had tested positive for HIV. The counselor advised him to get a T-cell count,[1] but Owen did not do so.

Owens' disability policy lapsed in May 1992 for nonpayment of premiums. On October 26, 1992, he completed an application for reinstatement of the policy. The application form asked whether the applicant "[d]uring the past two years [had] consulted or been treated by a physician or practitioner" and contained the statement "I represent that I ... am in good health to the best of my knowledge and belief." Owens answered the question "None" and signed the application form, thus adopting the quoted representation.

In February 1993, Owens was admitted to a hospital because of illness and soon thereafter was diagnosed as having acquired immune deficiency syndrome ("AIDS"). On June 6, 1993, he submitted to Berkshire a notice of claim for disability benefits. After conducting a routine investigation and learning that Owens had known that he was HIV positive at the time he applied for reinstatement of the policy, Berkshire rescinded the policy and tendered back to Owens the premiums he had paid subsequent to reinstatement. It then brought this action for a declaration that the policy was rescinded. Owens counterclaimed for, *inter alia,* breach of contract.

Owens maintains that when he completed the reinstatement application in October 1992, he felt perfectly healthy and that he had not been treated by a doctor for any ailments. (Owens Dep. Aug. 30, 1995, at 67, 69) He states that he then believed, and continues to believe, that testing positive for HIV is not synonymous with contracting AIDS or facing certain death. (*See id.* at 111) He contends that he believes that persons who are HIV positive can remain healthy, although of course that has not been his own experience. He points to a friend who tested HIV positive four or five years before Owens did who allegedly remains healthy today. (*Id.* at 96, 118–19) Berkshire, to be sure, disputes Owens' assertions and has submitted extensive circumstantial evidence, the object of which is to undermine Owens' credibility. It contends also that Owens' belief, even if sincerely held, simply is not justified.

### Discussion

■ There is no issue as to the accuracy of Owens' response to the question on the application form as to whether he had seen a doctor during the two preceding years. The

---

1. The T-cell count is an indicator of the extent to which the patient's immune system has been compromised by the HIV virus and thus of the patient's susceptibility to opportunistic infections. Owens claims that he did not know the significance of a T-cell count in 1992.

dispute centers on his adoption of the statement, "I represent that I ... am in good health to the best of my knowledge and belief."

It is well established in New York law that such statements, as distinguished from answers to purely factual questions such as the one Owen answered, call for statements of opinion. In consequence, they do not provide a basis for rescission of a policy absent proof of actual fraud by the applicant. *Berger v. Manhattan Life Insurance Co.*, 805 F.Supp. 1097, 1101 (S.D.N.Y.1992); *Bronx Savings Bank v. Weigandt*, 1 N.Y.2d 545, 549, 154 N.Y.S.2d 878, 881, 136 N.E.2d 848, 850 (1956); *Sommer v. Guardian Life Insurance Co. of America*, 281 N.Y. 508, 514, 24 N.E.2d 308 (1939). There is no fraud if an applicant who affirmed his or her good health "in good faith believed and was justified in believing that his health was not impaired by any condition which would ordinarily be regarded as a 'disease.' The representation cannot reasonably be understood as intended to do more than convey to the company such information as the applicant might be expected to have and to give to the company assurance that the applicant has had no symptom of disease which would, ordinarily, act as a warning or notice, even to a layman, that his health might be impaired in substantial degree, and assurance that the applicant, in good faith, believes that he is in fact a well person." *Weigandt*, 1 N.Y.2d at 550, 154 N.Y.S.2d at 881, 136 N.E.2d at 850 (quoting *Sommer*, 281 N.Y. at 514, 24 N.E.2d 308).

Here there manifestly is a genuine issue of fact as to Owens' subjective belief, so Berkshire devotes its main effort to demonstrating that no one who has tested HIV positive is justified in believing that he or she is in good health. It has offered an affidavit by a professor of medicine that characterizes HIV as a disease without a cure that relentlessly destroys the immune system and describes AIDS as "severe HIV" disease. (Landesman Aff. ¶¶ 16, 12) Owens, however, has submitted an affidavit by another professor of medicine in which the expert gives the opinion that it would not be unreasonable for a lay person who had tested HIV positive, but who was asymptomatic, nevertheless to believe

that he or she was in general good health and did not have a deficiency of the immune system. (Laurence Aff. ¶ 11) Another doctor stated in his deposition that a person who is HIV positive and believes he or she can stay healthy is hopeful but not naive. (Smith Aff. Ex. 6, Wallach Dep. 135–37)

The Court recognizes that the affidavit submitted by defendant's expert is drawn with care. Cross-examination of the expert may prove revealing, as indeed might the cross-examination of Owens concerning the state of his knowledge concerning the implications of the HIV test result notwithstanding his alleged lack of symptoms. Nevertheless, there is a genuine issue of material fact as to the justifiability of Owens' professed belief.

Owens too seeks summary judgment. Insofar as he does so on the ground that he made no misrepresentation, there is an issue of fact in light of Berkshire's circumstantial evidence that Owens knew full well when he signed the reinstatement application that he was suffering from an incurable, inevitably fatal, disease or that Owens' beliefs, even if sincerely held, were unjustified. The motion is equally without merit insofar as it rests on the assertion that the policy had become incontestable, as the incontestability clause permits the carrier to deny coverage on the ground of fraud without regard to time. Hence, if Berkshire establishes that Owens made a material fraudulent misrepresentation, the incontestability clause will be of no help to Owens.

*Conclusion*

The Court assumes that Berkshire would have denied reinstatement had it known that Owens was HIV positive. It therefore may seem harsh to deny its motion for summary judgment in light of the fact that Owens did not disclose that fact to it. Berkshire, however, could have protected against the situation in which it now finds itself simply by asking whether the applicant ever had tested positive for HIV. By failing to do so, and by depending instead on the vague and subjective representation that it put in its application form, it created for itself precisely the risk that has matured in this case. As the

Berkshire form quite plainly makes Berkshire's ability to avoid the policy depend upon the subjective beliefs of the applicant and the justifiability of these beliefs, and as there are genuine and material issues of fact on both those points, Berkshire is not entitled to summary judgment.

The cross-motions for summary judgment are denied.

SO ORDERED.